PROPRIETORS OF THE MEETING-HOUSE IN HOLLIS STREET
*vs.* JOHN PIERPONT.

Where a minister and his parish submit a controversy between them to an ecclesiasti
cal council, the decision of such council, if not impeached for good cause, is a justifi-
cation of the party conforming to it, though it does not, *ex proprio vigore*, operate as
a judgment.

A minister and his parish submitted to an ecclesiastical council the question whether
he should be dismissed: Among other causes, assigned by the parish for his dis
missal, was a certain alleged immorality: The council decided that the alleged
immorality was not proved, and that there was no sufficient cause for a dismissal:
The minister conformed to the decision, continued to perform his parochial duties,
and brought an action against the parish to recover his salary: The parish there-
upon filed a bill of discovery, alleging that he had forfeited his office of minister
of the parish, by reason of the aforesaid immorality, and that proof thereof was
essential to their defence against said action; and praying that he might be compelled
to answer on oath respecting the same: The minister pleaded the decision of said
council, and his conformity thereto, as a bar to the bill. *Held*, that the minister was
not bound to make the discovery sought, because the decision of the council pre
cluded the parish from giving any evidence in support of said charge of immorality,
by way of defence to said action.

WILDE, J.   This is a bill of discovery, whereby the plaintiffs
seek to compel the defendant to disclose certain facts, the proof
of which they allege to be material to their defence in an action
at law now pending in this court, wherein they have been sued
by the present defendant for the recovery of his salary due to
him, as he alleges, as their pastor, under the contract between
them at the time of his settlement.   The case has been heard on
the bill and the defendant's plea; and the question is, whether
upon the facts alleged the defendant is bound to disclose the
evidence sought.   The form of the bill is not material, in deci-
ding on the validity of the plea.   It was proposed by the defend-
ant's counsel to submit some objections to the sufficiency of the
bill; but our impression was, at the time of the argument, that
these objections are not open to discussion in the present state
of the pleadings; and such we find to be the rule of pleading
and practice in the English courts of equity.   It is so stated in
Mitf. Pl. (3d ed.) 190, and was so decided in *Tweddell* v.
*Tweddell*, there cited.   In that case, the court refused to hear
an argument as to any inference to be made from the facts
stated in the bill; and after overruling the plea, the defendant

was allowed to demur to the bill.    We are therefore confined to
the question as to the validity of the plea ; whether the facts
therein alleged are a sufficient bar to the discovery sought for.
To determine this, we must consider and ascertain the grounds
on which the plaintiffs claim a right to compel a discovery.

The bill alleges, that before the time when the salary sued for
in the said action at law was earned, the plaintiffs, by a legal
vote, dismissed the defendant from being their minister, and that
they requested him to acquiesce in the said vote, but that he re-
fused so to do.    The only cause of dismissal assigned in the bill
is a charge of falsehood and prevarication in the defendant's
answers to certain questions relating to a prologue written for
one William Pelby, to be spoken at the opening of a theatre in
this city, and for which the said Pelby had offered a prize of
$100.

If the facts alleged in the plea are sufficient in law to pre-
clude the plaintiffs from availing themselves, in said action at
law, of any evidence in support of this charge, then it is clear
that the defendant is not bound to answer the interrogatories in
the bill.    The material facts alleged in the plea are, that all
charges relating to this subject have been submitted to an eccle-
siastical council, mutually chosen by the parties, and fully au-
thorized to decide whether the charges alleged in the bill were
true or not ; and that thereupon, after a full hearing of the par-
ties and their evidence, and after fully considering the same, the
said council came to a result, acquitting the defendant of all said
charges, and of all other charges affecting his moral character ;
being of opinion, (and they so decided,) that the evidence was
not sufficient to furnish ground for advising a dissolution of the
connexion between the defendant and his parish.    On this de-
cision the defendant's counsel rely, contending that as he has
acquiesced in the same, and has continued ever since to discharge
his pastoral duties, the decision is binding on the plaintiffs, and
cannot be revised in an action at law, or by any other tribunal.
And it is insisted that the law has been so settled by repeated
decisions of this court.

The leading case reported on this subject is that of *Avery* v.

*Inhabitants of Tyringham,* 3 Mass. 182, in the decision of which the doctrine is thus laid down by Chief Justice Parsons : "On charges of immorality and neglect in the minister, the parties, if they cannot agree to dissolve the contract, may call to their as sistance an ecclesiastical council mutually chosen ; and their advice, technically called their result, is so far of the nature of an award made by arbitrators, that either party conforming thereto will be justified." Thus, he says, a reasonable tribunal, founded in ancient usage, is established to decide on all cases of difficulty and controversy between a minister and his people. The same doctrine, substantially, is again laid down in *Burr* v. *First Parish in Sandwich,* 9 Mass. 288, and has since been recognized in ɔther cases ; so that we consider this general principle as well established, and not now to be controverted.

It has been argued by the plaintiffs' counsel, that this rule of law has been qualified and limited, by the decision in the case of *Stearns* v. *First Parish in Bedford,* 21 Pick. 125, 126, according to the remarks made by the learned judge who delivered the opinion of the court in that case. The general rule of law, however, is there expressly admitted, although it was held not to be applicable to that case. It is there remarked, that " even where the convocation and proceedings of an ecclesiastical council are regular and satisfactory, the rule laid down in *Avery* v. *Tyringham,* must be taken with some qualification. It is not of univer sal application. When the result of council is the recommendation of acts to be done and conditions to be performed by each party, the performance of one party will not impose.legal obligations on the other. In such cases, the assent of both parties is indispensable to give validity to the decisions of council. But if the advice of council be, that the ministerial relation between a pastor and his parish be dissolved, for any sufficient cause, or that the former, for any misconduct, has forfeited his office, the principle applies ; and the party adopting it will be justified." And unquestionably the same principle applies, where the decision of the council is, as it is in the present case, that the ministerial connexion should not be dissolved. The decision of an ecclesiastical council, however, is not absolutely decisive. It

may be impeached in various ways, such as for partiality of the members of the council, or of any of them ; for the misconduct of the prevailing party, in improperly influencing or attempting to influence any of the members of the council, and for other causes. So if the ground of the decision, assigned by the council, appears to be insufficient to justify the result, the same may be impeached and annulled by a court of law. But the decision upon the evidence, and upon the facts, is conclusive, and is not to be revised. If the law were otherwise, and the decisions of ecclesiastical councils were merely advisory, and in no respect binding on the parties, these highly respectable tribunals, so long known and recognized by our judicial decisions, would soon cease to be of any practical utility. If they were clothed with no authority, and if their decisions were in no respect binding, they could in no sense be denominated tribunals, and the advice of an *ex parte* council, particularly, would seem to be useless, if not impertinent.

In Connecticut, it is held that the decision of an ecclesiastical council is conclusive, and not liable to revision by the courts of law. In *Whitney* v. *Brooklyn*, 5 Connect. 414, Chief Justice Hosmer says, that what acts or omissions of the incumbent create a forfeiture of the pastoral office, is a question not within the province of a court of law to determine ; it being exclusively within the cognizance of an ecclesiastical tribunal. So in New York, in the case of the *Dutch Church in Albany* v. *Bradford*, 8 Cow. 457, it was held that the decision of an ecclesiastical tribunal, to which the parties had agreed to submit themselves, was conclusive ; and that a court of law was shut out from all inquiry as to the morals or piety of the minister. But this decision was founded on the constitution and rules of the Reformed Dutch Church, by which every thing, in relation to the conduct and continuance of the minister in service, is exclusively of ecclesiastical cognizance.

The powers of ecclesiastical councils, and the effects given to their decisions, are by our law much more restricted. Their decisions are not conclusive in all respects, as already stated, and they do not operate *ex proprio vigore*, as a judgment, but only as a justification of the party conforming to them.

So also, if the minister should be guilty of any misfeasance or neglect of his official duties, the parish may at a legal meeting declare the office forfeited, declaring the cause ; and if the minister should still resist, and sue for his salary, the charges made by the parish, as creating a forfeiture, are questions of fact to be submitted to a jury ; and if found by them to be proved, the minister will be considered as not holding his office after the vote.   If, however, both parties agree to submit their controversies to a mutual council, it is difficult to perceive any reason why they should not be bound by its decision, according to the long established and well known law of this Commonwealth.

It has been argued, that the law, as laid down in the cases cited, is to be understood as limiting the authority of an ecclesiastical council to controversies relating to questions of theology, and other questions peculiarly suitable for the consideration of such a tribunal.   But there is no intimation of any limitation in this respect ; on the contrary, in *Avery* v. *Tyringham*, it is said that an ecclesiastical council is a tribunal " established to decide on all cases of difficulty and controversy between a minister and his people ; " and, among other cases, on charges of immorality against the minister.   So in *Thompson* v. *Society in Rehoboth*, 5 Pick. 479, Chief Justice Parker says, that imprudence, censoriousness, and other immoralities, which would not *per se* work a forfeiture of the minister's office, are exceedingly proper to be considered by a council, as sufficient, if habitual, to found advice of dissolution upon ; and that immoralities of a grosser sort, such as habitual intemperance, lying, unchaste or immodest behavior, &c. may be sufficient to justify a parish in dismissing their minister without the intervention of a council.   But it is nowhere intimated, in that or any other case, that the parties are restricted, in any respect, in submitting any controversy between them to a mutual council.   We are therefore clearly of opinion, that the plaintiffs are not entitled to the discovery sought, as the defendant's answers to the interrogatories in the bill could not be given in evidence in the action at law.

> *Bill dismissed, with costs for the defendant*

*Dexter & B. R. Curtis*, for the plaintiffs.

*Fletcher & Sewall*, for the defendant.